UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:20-CR-00093-BJB-1

USA,                                                                                                    Plaintiff,

v.

CORTEZ LAMONT EDWARDS ,                                                        Defendant.

## REPORT AND RECOMMENDATION

Defendant Cortez Lamont Edwards ("Edwards") has filed a motion to suppress obtained during a search of his home executed on September 27, 2020. (DN 21.) The United States filed a response opposing the motion. (DN 23.) This matter was referred to the undersigned for a report and recommendation on March 5, 2021.[1] (DN 26.) On April 8, 2021, the undersigned held a hearing on the motion. For the reasons stated below, the undersigned **RECOMMENDS** that defendants' motions to suppress be **DENIED**.

**I.      FINDINGS OF FACT**

Edwards is charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (DN 1.) Edwards's felon status results from his conviction for complicity to trafficking in a controlled substance and possession of a firearm by a convicted felon in Jefferson County Kentucky. (*Id.*) Personnel for the Louisville Metro Police Department Real Time Crime Center ("RTCC") and the Bureau of Alcohol, Tobacco, and Firearms ("ATF") came to suspect Edwards's unlawful firearm possession during social media monitoring related to ongoing disturbances in Louisville taking place at the time. (DN 23, at PageID # 89.) On September 26,

---

[1] The Court notes that the referral order requires the undersigned to review the validity of a warrant that the undersigned issued. The undersigned does not believe that this presents a conflict of interest. During the April 8, 2021 hearing on the motion, counsel for Edwards informed that Court that she had researched the issue and concluded that recusal is not warranted under these circumstances.

2020 ATF Special Agent Robert E. Jones ("Agent Jones") was alerted to a Facebook Live video broadcast observed by RTCC which included a man displaying what appeared to be a firearm and making statements perceived as threatening police officers. (DN 1.) Investigators determined that the account from which the video broadcast originated was associated with Edwards. (DN 23, at PageID # 89.) Background searches on Edwards revealed his criminal record and home address. (DN 1.) That same day, Agent Jones requested an affidavit seeking a warrant to search Edwards's home.

Agent Jones's affidavit established extensive law enforcement experience, including five years employed by the ATF investigating firearms claims, thirteen years employed as a special agent for the United States Secret Service, and eight years employed as an officer for the Jefferson County Police Department. (DN 21-1, at PageID # 69.) In support of probable cause, Agent Jones described his investigation. (*Id.*, at PaggeID # 70-71.) Though the Magistrate Judge was not presented with the video evidence, the affidavit in support of the warrant describes the video as showing Edwards "standing on the front porch of the residence in possession of the AR pistol, admitting that he is a convicted felon . . . ." (*Id.*, at PageID # 71.) Attached as an exhibit to the affidavit was a still image taken from the video of the alleged firearm to be seized. (*Id.*) Agent Jones also swore that, based on his experience, "firearms are not consumed in use, and are typically stored in residences, vehicles or places of safe haven for extended periods of time. Firearms also have an intrinsic monetary value, which is often accompanied by historic value. Firearms are usually secured by the possessor in safe places to prevent theft, loss or damage." (*Id.*) The Magistrate Judge found that Agent Jones's affidavit established sufficient probable cause to search Edwards's home, and thus issued the warrant.

On the morning of September 27, 2020, agents from the ATF, Department of Homeland Security, United States Marshal Service, Federal Protective Service and officers and Louisville Metro Police Department executed the search warrant. (DN 1.) During the search, officers seized among other things a Glock model 19, 9-millimeter semi-automatic pistol and ammunition. (*Id.*) The AR pistol shown in the video was not recovered.

## II. LEGAL STANDARD

The Fourth Amendment commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Designed to prohibit the general warrants common at the time of the founding, this text requires that a warrant specifically identify the "place" to be searched and the "things" to be seized. *Id.*; *see Ashcroft v. al-Kidd*, 563 U.S. 731, 742–43, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). "And courts have long held that a probable-cause 'nexus' must connect these two together: There must be a fair probability that the specific place that officers want to search will contain the specific things that they are looking for." *United States v. Reed*, No. 20-5631, 2021 WL 1217871, at *3 (6th Cir. Apr. 1, 2021) (citations omitted). The findings of the judge who issued the search warrant are entitled to "great," though not "boundless," deference. *United States v. Leon*, 468 U.S. 897, 914 (1984) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)); *see also United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993) ("This court pays 'great deference' to a magistrate's findings, which 'should not be set aside unless arbitrarily exercised.'"). Finally, in determining the sufficiency of the evidence supporting probable cause, the reviewing court is limited to the information presented in the four corners of the affidavit.

3

*United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Whiteley v. Warden Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971)).

The Supreme Court's exclusionary rule bars the government from admitting incriminating evidence at a defendant's trial if the police violated the Fourth Amendment when discovering the evidence. *See Mapp v. Ohio*, 367 U.S. 643, 654, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Yet the exclusionary rule does not reach all Fourth Amendment violations no matter the circumstances. *See Davis v. United States*, 564 U.S. 229, 237–38, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). Because the exclusionary rule is designed to discourage law enforcement misconduct, the Supreme Court has held that it generally does not apply when officers execute a search in reliance on a judge's finding of probable cause in issuing a warrant. This so-called "good faith" exception to the exclusionary rule will apply to evidence seized pursuant to a warrant except:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

*United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005).

Affidavits that are "so lacking in indicia of probable cause" have come to be known as "bare bones" affidavits. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citations omitted.) The execution of a warrant supported by a bare bones affidavit "shows that the officer recklessly relied on the judge's decision that probable cause existed for the warrant." *United States v. Reed*, No. 20-5631, 2021 WL 1217871, at *6 (6th Cir. Apr. 1, 2021). Under this framework,

4

"[e]ven if an affidavit describing a suspect's [criminal] activity does not establish a probable-cause nexus between the place to be searched and the evidence of that activity, the affidavit will avoid the bare-bones label so long as it identifies a 'minimally sufficient' nexus between the two." *United States v. Reed*, No. 20-5631, 2021 WL 1217871, at *6 (6th Cir. Apr. 1, 2021) (citations omitted). A minimally sufficient nexus exists when there is "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017)).

### III. CONCLUSIONS OF LAW

Edwards argues that all evidence obtained as a result of the execution of the search warrant should be suppressed because Agent Jones's affidavit lacked sufficient evidence to establish a proper nexus between Defendant's alleged criminal activity and his home. (DN 21, at PageID # 51.) Edwards cites to *United States v. Bethal*, 245 F. App'x 460 (6th Cir. 2007), arguing that the case establishes that "there is not a legal presumption that guns will be kept in a suspect's home." (*Id.*, at PageID # 53.) Rather, Edwards argues that an inference that a firearm used in a crime outside the home will be found in the home requires some additional basis, such as evidence of ongoing criminal activity, an independent investigation confirming continued possession of the firearm, or evidence that the suspect himself purchased the firearm. (*Id.*, at PageID # 53-55.) Absent such an additional basis, Edwards argues that an inference that the firearm will be found in the home requires "evidence of a direct link between the home and the crime." (*Id.*, at PageID # 55.) Here, Edward asserts that the affidavit establishes neither a direct link between the alleged crime and his home nor an additional basis supporting an inference that the firearm would be found in the home. (*Id.*)

5

In response, the Government argues that the affidavit contains sufficient evidence to support an inference that there was a nexus between the alleged crime and the home. (DN 23, at PageID # 90-94.) First, the Government cites to Sixth Circuit precedent recognizing that firearm owners tend to keep them in their homes and that criminals often store evidence of their crimes in their homes. (*Id.*, at PageID # 92-94.) Second, the Government cites to caselaw recognizing that firearms, by their nature, are nonperishable and tend to be kept by their owners for extended periods of times. (*Id.*, at PageID # 94.) The government also notes that "the search warrant was obtained only a few days after Edwards livestreamed himself in possession of the firearm in front of his residence." (*Id.*) Finally, the Government noted that "Agent Jones, who possessed approximately 25 years of state and federal law enforcement training and experience, which included investigating firearm offenses, opined that individuals who illegally possess firearms commonly store them at a secure location such as their residence." (*Id.*) Based on the foregoing, the Government argues that here, the totality of circumstances supports a reasonable inference that the firearm displayed in the livestream would be found in Edwards' home. (*Id.*)

Taken as a whole, the affidavit supports the Magistrate Judge's finding of probable cause to believe that the AR pistol Edwards displayed in the Facebook Live broadcast would be found in his home. Specifically, Agent Jones averred that: (1) he observed a video recording showing Edwards "standing on the front porch of the residence in possession of the AR pistol" three days before filing the warrant application; (2) Edwards is a felon as a result of prior convictions for complicity to trafficking in a controlled substance and possession of a firearm by a convicted felon; (3) he had confirmed that the place to be searched was in fact Edwards's residence; and (4) based on his twenty-six years of law enforcement experience, including the past five years as a special agent for the ATF investigating firearms crimes, he is aware that firearms "are typically stored in

residences, vehicles or other places of safe haven for extended periods of time." (DN 21-1, at PageID # 69-71.) Based on this information, the Magistrate Judge could reasonably infer that the firearm would probably be found in Edwards home.

The Court now addresses Edwards arguments to the contrary. The Court begins with Edwards's assertion that evidence that he was standing on the front porch of the residence holding the firearm does not establish a direct link to the interior of the residence. Edwards cites U.S. v. McPhearson, 469 F.3d 518 (6th Cir. 2006), a case in which a warrant to search the defendant's home for drugs and other evidence of drug trafficking was issued based on an affidavit stating that defendant was arrested for assault at his home, and a search incident to the arrest yielded a bag of crack cocaine in the defendant's front pocket. 469 F.3d at 522. The district court granted defendant's motion to suppress evidence obtained through the search warrant, and the Sixth Circuit affirmed, finding that the warrant depended on an impermissible inference that "an individual arrested outside his residence with drugs in his pocket is likely to have stored drugs and related paraphernalia in that same residence." *Id.* at 524. The Court further noted that such an inference is not always impermissible, but that in prior cases it had only permitted the inference when "the affidavits contained an additional fact that permitted the magistrate to draw the inference that evidence of wrongdoing would be found in the defendants' homes—namely, the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes." *Id.*

The gist of *McPhearson* is that just because a defendant is found with a relatively small amount of an illicit drug on his person when arrested at his home, one cannot reasonably infer that *additional* drugs and evidence of drug trafficking will probably be found inside the home. *See id.* Here, that reasoning doesn't apply because in this case, the warrant sought the firearm that

7

Edwards had recorded himself holding, which, of course, had not yet been seized. Given that the firearm had not been seized and that "[f]irearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time," it follows that firearm remained somewhere in Edwards' possession.[2] *United States v. Goodwin*, 552 F. Appx 541, 545 (6th Cir. 2014) (citation omitted); *see id.* ("Possession of a firearm is a continuing offense that ceases only when the felon relinquishes possession."). And, when the only place Edwards had been seen with the firearm was on the porch of his home and just outside his home, it is reasonable to conclude that the 'somewhere' was inside his home. *See United States v. O'Connor*, 723 F. App'x 302, 310 (6th Cir. 2018) ("[T]he issuing magistrate could have reasonably inferred that [the defendant] was keeping the weapon either in the rented car or at the residence where the car was seen parked and which was listed as his residence on his arrest warrant.").

Edwards also cites to United States v. Bethal, 245 F. Appx. 460, 464 (6th Cir. 2007), arguing that an isolated criminal act "requires direct known links between the place to be searched and the criminal activity." (DN 21, at PageID # 53.) However, by its nature, the alleged crime of felon in possession is not isolated, but ongoing. *United States v. Doaty*, 488 F. Supp. 3d 546, 553 (W.D. Ky. 2020) (quoting *Goodwin*, 552 Fed. App'x. at 545.) Even if that were not the case, the connection between the evidence sought and place to be searched is far stronger than in *Bethel*. *Bethel* involved a defendant suspected of being involved in a drive by gang shooting. 245 F. Appx. at 462. In October 2000, a police detective applied for a warrant to search the defendant's

---

[2] Edwards's citations to cases purported to show "that individuals using guns do not routinely keep them in their home, but usually get rid of them," (DN 21, at PageID # 53), do not undermine this conclusion. In each of those cases, the defendants were suspected of committing murders with firearms, a far more serious crime than mere possession, which implies a far greater motivation on the part of the defendants to get rid of the evidence. *See United States v. Bethal,* 245 F. Appx. 460, 464 (6th Cir. 2007) (defendant suspected in involvement with several drive by gang shootings); *Williams v. Withrow*, 944 F.2d 284, 286-87 (6th Cir.1991), rev'd on other grounds, 507 U.S. 680, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (defendant convicted of two counts of first degree murder); *Smith v. Com.*, 599 S.W.2d 900, 902 (Ky. 1980) (defendant convicted of capital murder and murder for hire).

home for drugs and firearms. *Id.* at 463. The detective's affidavit stated that witnesses reported that the defendant had been present among the perpetrators of two drive by shootings in July and August of that year, that the defendant was a known gang member, and that the place to be searched was his residence. *Id.* A warrant was issued and executed, after which the defendant moved to suppress the evidence seized during the search of his home. *Id.* The district court granted the motion and the Sixth Circuit affirmed, finding that "the affidavit only contained information connecting the appellant to two shootings; it did not include any facts connecting him to drugs or to weapons at his home other than his alleged status as a gang member . . . ." *Id.* at 468. The Court further found that a continuing criminal operation theory could not establish a link between the evidence sought and the defendant's home because the detective's affidavit "provided no indication that at the time of the search, [the defendant] was still participating in gang-related shootings, or was seen carrying a gun." *Id.* at 469.

Here, unlike in *Bethel*, the affidavit established that Edwards had been seen with the firearm that the warrant sought to recover. Additionally, the time between the alleged crime and the execution of the search warrant was not attenuated as was the case in *Bethel*. Here, Edwards filmed himself in possession of the firearm three days before the warrant was executed, a period far narrower than the several months between the defendant's alleged crimes in *Bethel* and the search of his home. Finally, the alleged crimes in *Bethel* took place away from the defendant's home, whereas here, Edwards's alleged criminal conduct took place on the front porch of his home. In fact, the Court in *Bethel* distinguished from a prior case, United States v. Smith, 182 F.3d 473, 480 (6th Cir.1999), in which the warrant had been upheld, stating that *Smith* "concerned a search warrant for weapons based upon an informant's observing the defendant with two specific guns at

9

a specific address, the suspect's home. Obviously the facts in this case do not fall into that scenario." *Bethel*, 245 F. Appx. at 469. In sum, *Bethel* is not analogous to this case.

The statements within the four corners of Agent Jones' affidavit established a sufficient basis for the Magistrate Judge to find probable cause that the firearm sought by the warrant would be found in Edwards's home. Because the Magistrate Judge's finding of probable cause was proper, the search of Edwards's home was lawful, and the Court need not address the applicability of the good faith exception to the exclusionary rule. *See United States v. Goodwin*, 552 F. App'x 541, 548 (6th Cir. 2014)

## IV. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that Edwards' Motion to Suppress (DN 21) be **DENIED**.

Colin H Lindsay, Magistrate Judge
United States District Court

May 3, 2021
cc: Counsel of record
TIC: 60min

**Notice**

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Crim. P. 59(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).